63 A.3d 128

**Mark Aaron SNYDER**

v.

**STATE of Maryland.**

No. 2225, Sept. Term, 2010.

Court of Special Appeals of Maryland.

March 20, 2013.

Erin Murphy (Silverman, Thompson, Slutkin & White, on the brief), Baltimore, MD, for appellant.

Carrie J. Williams (Douglas F. Gansler, Atty. Gen., on the brief) Baltimore, MD, for appellee.

Panel: MATRICCIANI, KEHOE and IRMA S. RAKER (Retired, specially assigned), JJ.

RAKER, J.

Mark Snyder, appellant, was convicted in the Circuit Court for Harford County in two separate trials arising from two separate incidents occurring on April 26, 2009. In Case No. 872, appellant was convicted of two counts of first-degree assault, fourth-degree burglary, malicious destruction of property, four counts of reckless endangerment, and illegal possession of a firearm. In Case No. 871, appellant was convicted of two counts of first-degree assault, malicious destruction of property, and illegal possession of a firearm.

Appellant presents three questions for our review:

1. Was the evidence sufficient to find appellant guilty of first and second-degree assault against Randy and Mary Ray in Case No. 872?

2. Did the trial court err in admitting other crimes evidence in Case No. 871?

3. Was appellant properly convicted of illegal possession of a firearm in Case No. 871?

We shall hold that the trial court did not err or abuse its discretion. Accordingly, we shall affirm.

## I.

This appeal arises out of two separate indictments returned by the Grand Jury for Harford County. In case number 872, appellant was indicted for thirty-seven counts, including murder, first and second-degree assault, burglary and handgun violations arising from shootings which took place on the properties of appellant's former neighbors.[1] For ease of following the case, we shall refer to Case No. 872 as the "Neighbor Case." In Case No. 871, appellant was charged with violations similar to those in the Neighbor Case and which arose from a shooting that occurred on the property of appellant's former employers, Richard and Janette Crouse.[2] We shall refer to Case No. 871 as the "Crouse Case." The Neighbor event and the Crouse event occurred on the same evening. The cases proceeded in separate jury trials in the Circuit Court for Harford County.

---

**1.** In the Case No. 872, appellant was indicted by the Grand Jury for Harford County with six counts of attempted first-degree murder; six counts of attempted second-degree murder; six counts of first-degree assault; six counts of second-degree assault; first-degree burglary; second-degree burglary; fourth-degree burglary; two counts of malicious destruction of property; use of a handgun in commission of a crime of violence; illegal possession of a handgun; wearing and carrying a dangerous weapon; wearing, carrying, or transporting a handgun; and six counts of reckless endangerment.

**2.** In the Case No. 871, appellant was indicted by Grand Jury for Harford County with two counts of attempted first-degree murder; two counts of attempted second-degree murder; two counts of first-degree assault; two counts of second-degree assault; attempted burglary in the first-degree; malicious destruction of property; use of a handgun in commission of a crime of violence; illegal possession of a handgun; wearing and carrying a dangerous weapon; wearing, carrying, or transporting a handgun; and two counts of reckless endangerment. Appellant proceeded to a second jury trial for these offenses in the Circuit Court for Harford County.

We turn first to the Neighbor Case. In the Neighbor Case, appellant challenges on appeal only his conviction of first and second-degree assault of Randy and Mary Ray. Accordingly, we set out the facts relevant to the assault incident only. The State's evidence showed that appellant went to the Ray's neighborhood and that at approximately 2:30 a.m., a neighbor, Ronald Testerman, saw appellant's pick up truck parked adjacent to the Ray's house and that he heard gunshots coming from the direction of the Ray's home. Mr. Testerman observed appellant exiting the Ray's house holding firearms. He observed appellant fire three gunshots at the Ray's house and then leave.

Randy Ray testified that he had been away from home at the time of the incident, but, when he arrived home, he found that his windows were shot out, the front door was off, and police were in his driveway. Mr. Ray testified that while he and his wife were away, he left lights on in the living room and bedroom. The Rays also left their dogs at home.

Appellant proceeded to a trial before a jury in the Circuit Court for Harford County. The jury convicted him of first and second-degree assault of Randy Ray; first-degree and second-degree assault of Mary Ray; fourth-degree burglary; malicious destruction of property; four counts of reckless endangerment (one count each against Ronald Testerman, Sherry Testerman, Gary Babb, and Lisa Babb), illegal possession of a firearm; and wearing, carrying or transporting a handgun. Appellant was found not guilty on all other charges.

The event at the Crouse home occurred on the same evening as the Neighbor event. Janette Crouse testified that at 3:00 a.m. on April 26, 2009 she observed appellant's truck outside her home and heard a half dozen gunshots. A window over her doorway was damaged. Her husband, Richard Crouse, testified that he recognized appellant's voice yelling at him. Mr. Crouse then called police.

Detective Golden executed a search warrant at appellant's home, where he found a shotgun, a 9mm handgun, and, in a safe, ammunition for both guns. Appellant objected to any

testimony referring to any handguns or ammunition found in his home. The jury in the Crouse Case found appellant guilty of first and second-degree assault of John and Janette Crouse; malicious destruction of property; illegal possession of a firearm; and wearing, carrying or transportation of a handgun. Appellant was found not guilty on all other charges.

Appellant proceeded to sentencing on both cases on October 18, 2010.[3] This timely appeal followed.

## II.

We address first appellant's argument in the Neighbor Case. Before this Court, appellant presents one argument: that the evidence was insufficient to support his conviction for first and second-degree assault of Randy and Mary Ray. He argues that "it is physically impossible for [him] to have committed the crime of first or second-degree assault as [he] did not have the apparent present ability to inflict serious physical injury or inflict offensive or harmful physical contact on the alleged victims who were not in the State at the time that the incident occurred." In other words, appellant argues that, because the Rays were not home at the time he shot into their home, he did not have the apparent present ability to inflict serious physical injury upon them.

---

3. In the Neighbor Case appellant received the following sentence: for first-degree assault of Randy Ray, the court imposed a term of incarceration of 25 years, all but 15 years suspended; for the first-degree assault of Mary Ray, the court imposed a term of incarceration of 25 years, all but 15 years suspended; for fourth-degree burglary, the court imposed a term of incarceration of 3 years; and for illegal possession of a firearm, the court imposed a term of incarceration of 5 years. In the Crouse Case, defendant received the following sentence: for the first-degree assault of Richard Crouse, the court imposed a term of incarceration of 25 years, all but 10 years suspended; for the first-degree assault of Janette Crouse, the court imposed a term of incarceration of 25 years, all but 10 years suspended; for malicious destruction of property, the court imposed a term of incarceration of 3 years; and for illegal possession of a firearm, the court imposed a term of incarceration of 5 years. The court ordered the appellant to serve the sentence he received in the Crouse Case consecutive to the sentence he received in the Neighbor Case. Defendant also received 5 years probation upon release.

The State argues that the evidence presented at trial was sufficient for a jury to find appellant guilty of first-degree assault. The State contends that to convict appellant of the attempted battery variety of assault, it need show only that (1) appellant tried to cause immediate physical harm to Randy and Mary Ray; (2) appellant intended to cause physical harm to Randy and Mary Ray; (3) appellant's actions were not consented to by Randy and Mary Ray; and (4) appellant used a firearm to commit the assault or that appellant intended to cause serious physical injury in the commission of the assault. Moreover, the State contends that it is not required to prove that it was actually possible for appellant to consummate his attempted battery in order to sustain the conviction for attempted battery variety of assault.

## III.

First, we address appellant's claim that there is insufficient evidence to convict him of first and second-degree assaults of Randy and Mary Ray. When reviewing a conviction for sufficiency of the evidence, this Court must be satisfied that, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *State v. Mayers*, 417 Md. 449, 466, 10 A.3d 782, 790 (2010). We give due deference to the factfinder's determination of fact and rational inferences made in reaching its decision. *See State v. Smith*, 374 Md. 527, 557, 823 A.2d 664, 682 (2003).

In Maryland, first and second-degree assault are statutory crimes. *See* Maryland Code (2002, Repl.Vol.2012) §§ 3–202, 3–203 of the Criminal Law Article.[4] To convict appellant of first-degree assault, the State must prove all the elements of assault in the second-degree, and, to elevate the offense to first-degree, at least one of the statutory aggravating factors.

---

4. Unless otherwise indicated, all subsequent statutory references herein shall be to the Criminal Law Article.

Statutory second-degree assault encompasses three types of common law assault and battery: (1) the "intent to frighten" assault, (2) attempted battery and (3) battery. To prove the attempted battery variety of second-degree assault, the State must prove that (1) appellant actually tried to cause physical harm to Randy and Mary Ray; (2) that he intended to bring about physical harm to the Rays, and (3) that his actions were not consented to by the Rays. To prove first-degree assault, in addition to proving the elements of second-degree assault, the State must prove also that appellant either used a firearm to commit an assault, or that he intended to cause serious physical injury in the commission of the assault. § 3–203.

The evidence presented at trial showed appellant fired gun shots into the Ray's home at approximately 2:00 a.m., while the lights were on in the house. When the Rays returned home, they found that the windows had been shot out and broken and that the front door was off its hinges. There were new bullet holes in the kitchen cabinets, sheet rock, range hood, refrigerator, a recliner chair in the living room and the race car parked in the garage. Appellant argues that because the Rays were not at home, he could not be convicted of assault. Appellant reasons that "it is physically impossible for [him] to have committed the crime of first or second degree assault as [he] did not have the apparent present ability to inflict serious physical injury or inflict offensive or harmful physical contact on the alleged victims who were not in the State at the time that the incident occurred."

Appellant is incorrect in his analysis. In order to understand why appellant is incorrect, it is important to understand more fully the crimes of assault, attempt and battery, and the history of the statutory crime of assault in Maryland. For a full and more thorough scholarly explanation of the crimes of assault and attempt, as well as the relationship between the tort concept of assault and the criminal assault, *see Lamb v. State*, 93 Md.App. 422, 613 A.2d 402 (1992) by Judge Charles E. Moylan, Jr., for the Court of Special Appeals, keeping in mind Judge Moylan's observation that "[c]ommon law assault,

then, is a chameleon concept that no one should attempt to describe too precisely." *Id.* at 441, 613 A.2d 402, 411.

Until 1996, when the General Assembly codified the crimes of assault and battery, in Maryland, assault and battery were common law crimes. *See* Md.Code Ann., (1957, 1996 Repl. Vol., 2000 Cum.Supp.) Art. 27, § 12–12A–7. In 1996, the Legislature enacted the statutory assault scheme, abrogating the common law offenses of assault and battery, but specifically providing that the crimes retain their judicially determined meanings. *See Robinson v. State*, 353 Md. 683, 728 A.2d 698 (1999). The statute defined assault, in Art. 27, § 12, to mean "the offenses of assault, battery, and assault and battery, which terms retain their judicially determined meanings." In 2002, as part of the code revision project, the assault statute became part of the Criminal Law Article, again without any substantive changes. *See* § 3–201(b);[5] *see also Britton v. State*, 201 Md.App. 589, 30 A.3d 236 (2011). Today, § 3–203 states that "[a] person may not commit an assault." Even after these revisions, assault means, "the crimes of assault, battery, and assault and battery, which retain their judicially determined meanings." Section 3–201(b). Thus, although the General Assembly has revised the Maryland Code relatively recently, the substantive law of "simple" criminal assault remains, more or less, the same as it was before the 1996 revisions. *See Cruz v. State*, 407 Md. 202, 209 n. 3, 963 A.2d 1184, 1188 (2009) (citing earlier Maryland common law of assault).

As Judge Moylan explained in *Lamb*, well before the statutory crime of assault in Maryland, "the term of art 'assault' may connote any of three distinct ideas: (1) A consummated battery or the combination of a consummated bat-

---

5. Three years later, in 2005, the Legislature changed the law of assault substantively by creating, in subsection (c), a new and more serious form of second-degree assault. Maryland Code (2002, Repl.Vol.2012) § 3–203(c) of the Criminal Law Article now provides that "[a] person may not intentionally cause physical injury to another if the person knows or has reason to know that the other is a law enforcement officer engaged in the performance of the officer's official duties."

tery and its antecedent assault; (2) an attempted battery; and (3) a placing of a victim in reasonable apprehension of an imminent battery." *Lamb*, 93 Md.App. at 428, 613 A.2d at 404; *see also Harrod v. State*, 65 Md.App. 128, 131, 499 A.2d 959, 961 (1985) (pointing out that the common law crimes of intent to frighten and attempted battery are two distinct crimes). The statutory offense of second-degree assault encompasses three modalities: (1) intent to frighten, (2) attempted battery, and (3) battery. The intent to frighten variety requires that the defendant commit an act with the intent to place another in fear of immediate physical harm, and the defendant had the apparent ability, at that time, to bring about the physical harm. The victim must be aware of the impending battery, *see id.* at 133, 499 A.2d at 961, and there must be an apparent present ability to commit the battery. *See Dixon v. State*, 302 Md. 447, 456–64, 488 A.2d 962, 966–70 (1985).

The attempted battery variety of assault requires that the accused had a specific intent to cause physical injury to the victim, and to take a substantial step towards that injury. *See Harrod*, 65 Md.App. at 135, 499 A.2d at 962. But, there is no need for the victim to be aware of the impending battery. *See Young v. State*, 303 Md. 298, 306, 493 A.2d 352, 356 (1985); *Hickman v. State*, 193 Md.App. 238, 251, 996 A.2d 974, 981 (2010); *Harrod*, 65 Md.App. at 131–35, 499 A.2d at 960–62. Professor Wharton also finds that the attempted battery variety of assault may be committed "even though the victim is entirely unaware of the impending battery." C. TORCIA, *Wharton's Criminal Law* § 179 (15th ed.1993). Notably, the attempted battery variety of second-degree assault does not require that the defendant have the apparent ability at the time of the act to bring about the intended result. *Lamb*, 93 Md.App. at 449, 613 A.2d at 415 (1992).

Professor Perkins, in his treatise, R. PERKINS & R. BOYCE, *Criminal Law* 164 (3rd ed.1982), has an extensive discussion on the common law crime of assault and the different concepts of assault and attempts. In early common law,

and indeed, in Maryland statutory law, "the offense which the great majority of courts are calling and punishing as a criminal assault is in effect an attempted battery." *Id.* at 159. The key to understanding the issue presented in the instant case is Professor Perkins's comment that "[t]he original concept of criminal assault developed at an earlier day than the doctrine of attempt in general, and crystallized on a much narrower basis in the sense of a greater degree of proximity." *Id.* at 164. Significantly, an act constituting an attempt may be more remote in time than the timing for an assault. At common law, an assault must, of course, precede the battery, but it does so immediately. *Id.* Professor Perkins points out that "in the early days there was no assault until the assailant came within apparent reach of his intended victim." *Id.* at 164–65. The language, present in many cases discussing assault, crept into the law "to emphasize the requirement of proximity rather than any notion of actual present ability." *Id.* at 165. Notably, Perkins observes that the one English case that did not involve assault that took the position that there could be no attempt to commit a crime if perpetration was impossible under the circumstances was later repudiated in England and has not been followed in the United States. *Id.* at 166. Hence, actual present ability is not required. *Id.* The bottom line is that "an effort to commit a battery that goes beyond preparation but lacks the element of 'present ability' is punishable as an attempt to assault," *id.* at 171, or under the Maryland statute, the attempted battery variety of assault.

▮▮▮ Maryland has embraced the analysis expressed by Professor Perkins on the law of assault and attempt. *See Dixon,* 302 Md. at 457, 488 A.2d at 966; *Lamb,* 93 Md.App. at 446–47, 613 A.2d at 413–14; *Harrod,* 65 Md.App. at 133–34, 499 A.2d at 961. Defining common law assault in *Dixon,* Judge Menchine, quoting R. PERKINS, *Criminal Law* (2nd ed.1969) stated as follows:

"An assault is (1) an attempt to commit a battery or (2) an intentional placing of another in apprehension of receiving as immediate battery."

*Dixon,* 302 Md. at 457, 488 A.2d at 966. Quoting Judge Orth, in *Lyles v. State,* 10 Md.App. 265, 269 A.2d 178 (1970), and adopting the definition set forth there, Judge Menchine went on as follows:

> "We said in *Williams v. State,* 4 Md.App. 643 [, 647, 244 A.2d 619, 622 (1968),] that any attempt to apply the least force to the person of another constitutes an assault. The attempt is made whenever there is any action or conduct reasonably tending to create the apprehension in another that the person engaged therein is about to apply such force to him. It is sufficient that there is an apparent intention to inflict a battery and an apparent ability to carry out such intention."

*Dixon,* 302 Md. at 458–459, 488 A.2d at 967.

As pointed out by the California Supreme Court in *People v. Williams,* 26 Cal.4th 779, 111 Cal.Rptr.2d 114, 29 P.3d 197 (2001), "[u]nlike criminal attempt where the 'act constituting an attempt to commit a felony may be more remote,' '[a]n assault is an act done toward the commission of a battery' and must 'immediately' precede the battery." *Id.,* 111 Cal.Rptr.2d 114, 29 P.3d at 201 (quoting R. PERKINS & R. BOYCE, *Criminal Law* 164 (3rd ed.1982)). The courts have required that for an assault, the perpetrator must have gone farther in the perpetration of the criminal act than for the crime of attempt, and that the "present ability" requirement of assault means that the perpetrator must have gone beyond the minimal steps involved in an attempt. *See Harrod,* 65 Md.App. at 134, 499 A.2d at 961 (1985). In the case at bar, appellant could have been found guilty of attempted battery if he had been apprehended in the front yard while he was merely loading the gun, preparing to shoot, while he could not have been found guilty of the assault with intent to frighten variety of assault or the now abrogated common law assault with intent to murder.

■ For the attempted battery version of assault, apparent present ability exists even when the defendant mistakenly

believes he could consummate immediately a battery.[6] *See Lamb v. State,* 93 Md.App. at 443, 613 A.2d at 412. Other states follow this approach as well. For instance, in *Hollingsworth v. State,* 366 So.2d 326 (Ala.Cr.App.1978), the Court of Criminal Appeals of Alabama reversed a conviction for assault. The defendant shot into a house with all the lights out in the middle of the night. The Alabama Court reversed the assault conviction because the defendant lacked the present apparent ability to commit the assault. The Court stated that the State produced no evidence that defendant knew that the house was occupied at the time of the shooting, nor that anyone inside the house was aware that the shooting occurred. *Id.* at 331–332. In other words, the defendant did not perceive that he had the present apparent ability to commit an attempted battery variety of assault, nor did the alleged victims perceive that the defendant had the present apparent ability to commit an intent to frighten variety of assault. Therefore, the court reversed appellant's conviction for assault.

In sum, the elements for an attempted battery variety of assault in the second-degree are that the defendant actually tried to cause physical harm to the victim, the defendant intended to bring about physical harm to the victim, and the victim did not consent to the conduct. In order to prove the first element, that the defendant actually tried to cause physical harm to the victim, the State must prove that the defendant believed he had the apparent presentability to consummate a battery.[7] To raise the offense from second-

---

6. Professor Perkins discusses factual impossibility in his treatise on criminal law. At common law, factual impossibility was not a defense to attempt.

"It would be quite unreasonable to take the view that any actual barrier to success, however much undetected at the moment, would prevent legal recognition of an attempt to commit a crime regardless of the circumstances."

R. PERKINS & R. BOYCE, *Criminal Law* 164 (3rd ed.1982).

7. In the attempted battery variety of assault, the apparent present ability is judged from the perspective of the accused. *Lamb v. State,* 93 Md.App. 422, 443, 613 A.2d 402, 412. In the intent to frighten variety

degree assault to first-degree assault, the State must prove, beyond a reasonable doubt, that the defendant committed a second-degree assault and then prove the additional require-ment that the defendant committed the assault with a firearm or with the intent to cause serious physical injury. Section 3–202.

We hold that the evidence was legally sufficient to support the judgment of conviction beyond a reasonable doubt for the offense of assault. Here, the State charged appellant with assault. The State presented evidence to prove the attempted battery variety of assault. A jury could find that appellant tried to cause Randy and Mary Ray immediate harm and intended to cause physical harm. The evidence presented at trial was sufficient to support the conviction of assault.

A jury could have found that appellant took a substantial step towards the commission of a battery, by finding that appellant actually tried to cause the Rays physical harm. Several neighbors testified that they heard gunshots from the direction of the Rays' property. Upon arriving home, the Rays found bullet holes throughout the exterior of their home as well as bullets in furniture. The recovered shotgun shells from the Rays' home match a firearm found in appellant's truck.

A jury could have concluded that appellant intended to bring about physical harm to the Rays. When appellant ar-rived at the Ray's house, all the lights were on, an automobile was in the Rays' driveway and the dogs were at home. A jury could have reasonably inferred that appellant believed that the Rays were home at the time of the attack, and that from his point of view, appellant believed he had the apparent present ability to consummate a battery against both Randy and Mary Ray. The jury could have inferred also from appellant's act of shooting multiple rounds into the Rays' home that appellant intended to cause the Rays immediate physical harm. *See*

---

of assault, the apparent present ability is judged from the perspective of the victim. *Id.*

*Chilcoat v. State,* 155 Md.App. 394, 403, 843 A.2d 240, 246 (2004) (noting that a jury may infer as defendant's intent the natural and probable results of his actions). Thus, although appellant failed to cause any injury to either Randy or Mary Ray because they were not at home at the time he fired the shots into their home, there was sufficient evidence presented to the jury at trial to convict appellant of first-degree assault.

## IV.

Next we turn to the appellant's claim that in the Crouse Case, the trial court allowed inadmissible other crimes evidence. Appellant claims that the evidence of the firearms and ammunition found in his home constitutes inadmissible other crimes evidence.[8] Before this Court, appellant argues that the trial court failed to conduct the third step of "other crimes" evidence analysis by failing to weigh the probative value of the "other crimes" evidence against its undue prejudicial effect.

The State argues that we should not reverse for three reasons. First, that appellant failed to preserve the issue of the admissibility of testimony regarding the guns and ammunition as other crimes evidence because appellant's counsel "mentioned other crimes evidence only once, and then his argument was different than his argument on appeal." Second, testimony regarding the guns and ammunition found in appellant's home do not constitute inadmissible other crimes evidence. Third, that the testimony regarding the guns and ammunition, even if constituting inadmissible other crimes evidence, was harmless error.

There are several statements to which appellant objected at trial that appellant argues are inadmissible other crimes evidence. Appellant's first objection, to Detective Golden's testimony about guns and ammunition found in appellant's home is as follows:

---

8. It is clear from the record that the State charged the appellant for the firearms found in his truck, not his house.

"DETECTIVE GOLDEN: I took photographs, and I helped search the residence for anything of evidentiary value we would be looking for.

[THE STATE:] Did you find anything of evidentiary value?

DETECTIVE GOLDEN: We did.

[THE STATE:] What did you locate?

DETECTIVE GOLDEN: *There were several different types of ammunition, a few different types of guns.*

DEFENSE COUNSEL: Objection. May we approach.

THE COURT: Certainly.

[DEFENSE COUNSEL:] I would object to the testimony concerning other guns and the amount at the house. As I indicated in our Motion in Limine, the fact that there were other guns that were in the house isn't relevant to this case. There is no probative value to it.

There are three guns that were found in my client's truck. The State has indicated those are the guns that were fired. At least one of them was. There's no probative value, and I think even if there was some probative value, I think that the testimony that there were other guns would be more prejudicial to my client, to his case. I don't think there's any of the exceptions, the 'other crimes' exception allowed here. For that reason, I'd make a motion and ask the Court to deny testimony about that, ask the answer be stricken.

THE COURT: Response, Mr. Lewis.

[THE STATE:] It's a generic categorization of what was found in the house. The ammo, as I understand it, is relevant and is pertinent to the case, ties back to the type of ammunition found both in the truck and in the shotgun when it's unloaded within the truck.

So all that information will be pertinent and relevant to the case, and also the testimony of other officers, specifically Detective Smith and Susan Kim from the crime lab. So it

would be pertinent and would tie into everything involved in the case.

\* \* \*

THE COURT: I don't think there is any objectionable testimony before the jury at this point. Certainly the officer can testify, the detective can testify as to his role as investigator, and what he did with respect to warrants is appropriate. So nothing specific has come up with respect to just a particular gun or weapon, just guns in general or ammunition. So the objection is overruled."

Appellant's second objection to photographs of ammunition found in his home is as follows:

"[THE STATE:] Does that photograph fairly and accurately depict the conditions of the safe as you found it on the day the warrant was executed?

DETECTIVE GOLDEN: Yes, it was.

[THE STATE:] State would offer State's Exhibit 11.

[DEFENSE COUNSEL:] I would like to see that.

Your Honor, I'd ask if we may approach.

THE COURT: Certainly.

[DEFENSE COUNSEL:] Your Honor, now we are going beyond just, I think, the seizing officer. Now he is trying to put in evidence of the ammunition, which I think the fact that they found ammo in the car relates to this. The State is trying to put in the pictures of the safe, the ones in the safe. It's State's 11, and they also have State's 12 and 13, all pictures of ammo.

The other thing I would point out is when we were objecting also about the guns and ammo is that the State did ask the question, 'What did you find of evidentiary value?' So they are proposing that these are of value as evidence, not just that they were seized. So again, I think they're not relevant to the case. Their probative value, any probative value is outweighed by the prejudice.

THE COURT: Any response?

[THE STATE:] It's probative. First of all, they have already conceded in their opening statement that there was a shotgun blast to the upper window.... I don't know what they are arguing over at this point, and when you have looked at all the photographs, all the officer is testifying to is that he went through, assisted with the Search and Seizure Warrant, photographed the safe as he found it. The next two photographs show part of the contents of the safe, which tie into, again, the weapon that is found within the truck, the extra shells that are found within the truck, because I will proffer to the Court, some of the shells that are found are, in fact, Federal Number 8 shotgun shells, and those are boxes of Federal Number 8 shotgun shells, one of which can be seen, there are shells missing from that box. So certainly it is relevant and pertinent to the facts of the case.

\* \* \*

THE COURT: I am going to overrule the objection. In this case, I think it is probative information for the jury with respect to the shotgun what was found, and that this ammunition was found at the home, there's a connection there that the State is certainly entitled to put before the jury with respect to intent."

Appellant next objects to the State's question to Detective Golden regarding whether he found any 9mm ammunition in the safe. The trial court's ruling on this objection is as follows:

"[DEFENSE COUNSEL:] This is the same theory. It's not probative, it's not relevant to the case. If it was relevant, its prejudice way outweighs its probative value. This is different because the State says about the shotgun shells we conceded they were used, and he testified there's been testimony already from the police officer especially, and I think Mr. Crouse, that the only shots to the house appeared to be from the shotgun shells. Here we are getting into 9mms. There's been no testimony about a 9mm gun being used. At this point, none whatsoever. So it's

irrelevant. There been no foundation in this case about 9mms. We have gone beyond what the State's case is.

THE COURT: Response.

[THE STATE:] Your Honor, the State would proffer to the Court that Detective Smith will testify that when he searches the truck that he recovers two spent 9mm casings. That there is a 9mm handgun found in the center console, one magazine is empty, the other magazine has four rounds.

Both Crouses testified that there were multiple shots fired, and Mrs. Crouse testified at least a half dozen shots. Mr. Crouse said several shots. More than one he knows. He wasn't counting at that point.

So I think it certainly ties in. The evidence that was later recovered are the weapons. It goes back to the same argument of this shows that he leaves the location, has the guns, has the ammunition, for basically all the guns in his vehicle or at his house, and then there's the two spent casings that are recovered within the truck that ties together. That again we have multiple shots being fired at this location.

Evidence found at the house shows ... that ammunition was there, was available to him, and then he goes into his preparation and his intent as to this crime.

\* \* \*

THE COURT: If I understand the theory of the State's case with respect to this particular evidence, it is that because multiple shots were fired at the house based on the testimony of Mrs. Crouse and Mr. Crouse's testimony that several shots were fired at the house, the State wants to make a case that they are not limited to just proving that it was by a shotgun that there may be other means by which those multiple shots were fired.

\* \* \*

I think all it proves ... is that they also found this other type of ammunition, other weapon, and that that perhaps is the basis of the multiple shots, but that doesn't in and of

itself mean they are bringing in other crimes. So I am going to overrule your objection."

Finally, appellant argues that the trial court erred when it permitted Detective Marziale to testify to the presence of the additional firearms and ammunition. Appellant's objection and the trial court's ruling are as follows:

[DEFENSE COUNSEL:] This would be a continuing of our continuing objection. It was present when Detective Golden testified. Again, we argued that the shells were seized at the house aren't probative to the case and are not relevant to the case.... Even if there was some probative value, that will be outweighed by the prejudice as far as that.

\* \* \*

THE COURT: The Court's previous ruling stands. The testimony with respect to the State's theory of the case as to multiple shots occurring and the State being free to pursue. There may have been different weapons used. The State is certainly free to make that argument, and, therefore, this evidence is admissible.

▇▇▇▇▇ Initially, we hold that appellant preserved his right to appeal the admission of evidence regarding the guns and ammunition found in his home. Rule 8–131(a) states, in pertinent part, that "the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court." Rule 5–404(b) states, in pertinent part, as follows:

"Evidence of other crimes, wrongs, or acts ... is not admissible to prove the character of a person in order to show action in conformity therewith. Such evidence, however, may be admissible for other purposes, such as ... motive, opportunity, intent, preparation, common scheme or plan, knowledge, identity, or absence of mistake or accident."

As the Rule provides, a court may not admit evidence of other crimes, wrongs, or acts that is offered "to prove the character of a person in order to show action in conformity therewith."

Such evidence is known as "other crimes evidence" or "prior bad acts" evidence. *See Gutierrez v. State,* 423 Md. 476, 489, 32 A.3d 2, 9 (2011). Prior bad acts evidence refers to activity or conduct which although not necessarily criminal, after taking into consideration the facts of the particular case, is evidence that tends to reflect adversely on or impugns a person's character. *See Klauenberg v. State,* 355 Md. 528, 549, 735 A.2d 1061, 1072 (1999).

Maryland has adopted a general rule of exclusion with respect to prior bad acts or other crimes evidence. *See Whittlesey v. State,* 340 Md. 30, 58, 665 A.2d 223, 237 (1995). Procedurally, Rule 5–404(b) sets out a three-step process for the admission of such evidence. First, the evidence must be relevant to the offense charged on some basis other than mere propensity to commit crime. *See State v. Faulkner,* 314 Md. 630, 634, 552 A.2d 896, 897–98 (1989). Second, the court must find by clear and convincing evidence that the defendant participated in the alleged acts. *See Harris v. State,* 324 Md. 490, 597 A.2d 956 (1991). Third, the court must determine that the probative value of the evidence substantially outweighs its potential for unfair prejudice. *Id.* at 500–01, 597 A.2d at 962; *see also Faulkner,* 314 Md. at 635, 552 A.2d at 898.

On appeal, appellant appears to be making one argument—that because the trial court failed to conduct the required balancing test, he is entitled to a new trial. The admission of prior crimes evidence under Rule 5–404(b) is a matter for the trial court's discretion. Like Maryland, Federal courts have held that a trial court must explain how the probative value of the evidence outweighs its prejudicial effect. *See Holbrook v. Lykes,* 80 F.3d 777, 786 (3d Cir.1996); *Crane v. Dunn,* 382 Md. 83, 100, 854 A.2d 1180, 1190 (2004). Significantly, if the trial court fails to provide such an explanation, the appeals court will do the balancing itself. *See* J. WEINSTEIN, Weinstein's Federal Evidence § 404.23 (2nd ed.1997) (stating that if the reasons for the ruling are not apparent from the record, the circuit court may make the determination

of the admissibility of the evidence); *see also United States v. Himelwright,* 42 F.3d 777, 781 (3d Cir.1994). In *Himelwright,* in undertaking the balancing analysis on appeal, the United States Court of Appeals for the Third Circuit stated as follows:

> "Even if we were to accept that the government's proffered purposes were somehow proper under Rule 404(b), our inquiry would not end there because the trial court failed to determine and to articulate whether the probative value of the firearms evidence outweighed its prejudicial effect under Rule 403. Once again, when a court engages in a Rule 403 balancing and articulates on the record a rational explanation for its determination, we will rarely disturb its ruling. Where, as here, the court fails to perform this analysis, the measure of deference we might otherwise accord is lessened, and we may undertake to examine the record ourselves and conduct the appropriate weighing test."

*Id.* at 785. (internal citations omitted).

Inasmuch as appellant's sole contention with regard to the other crimes evidence is that the evidence was more prejudicial than probative, for the purposes of our analysis, we focus only on the third step of the *Faulkner* analysis and will assume that the trial court was correct in its analysis as to the relevancy of the evidence.[9] Because the trial court did not explain how the probative value outweighed the prejudicial effect, we conduct this review *de novo.*

▬ Rule 5–403 directs trial courts to exclude otherwise relevant evidence if its "probative value is substantially outweighed by the danger of unfair prejudice." Rule 5–403. Evidence is prejudicial when "it tends to have some adverse

---

**9.** In any case, the ammunition, both the 9 mm and Federal Number 8 ammunition, were relevant to the facts of the case. The Fed. No. 8 ammunition found in the house was the same as the ammunition found at the crime scene and certain shells were missing from the box found at appellant's home. The 9mm ammunition found at appellant's home matched the shells found at the crime scene. As to the additional guns the police photographed at appellant's home, any error was harmless beyond a reasonable doubt.

effect ... beyond tending to prove the fact or issue that justified its admission." *Hannah v. State,* 420 Md. 339, 347, 23 A.3d 192, 196 (2011). In other words, the fear is that a jury will convict the defendant "because of something other than what he did in that case ... because of his criminal propensity." *Odum v. State,* 412 Md. 593, 611, 989 A.2d 232, 242–43 (2010).

 There are two items in question here: the shotgun ammunition and the 9mm handgun. Shotgun ammunition, even for a convicted felon, is not other crimes evidence and its possession, ordinarily, is not unlawful. It is clearly not other crimes evidence. Even if it did constitute other crimes evidence, the admission of such evidence was not error. Assuming the relevancy of the ammunition, we hold that appellant suffered no unfair prejudice as a result of this evidence.

 While reference to other guns found in the home might constitute other crimes evidence under the circumstances of this case (because possession of a firearm by a convicted felon is a crime), we do not find that the admission of such evidence contributed to the guilty verdict. The police found the 9mm handgun in appellant's car, which was clearly the basis of the unlawful gun conviction. On the first-degree, second-degree, and malicious destruction of property charges, the Crouses recall hearing several gunshots, finding evidence of gunshots hitting their home while they were inside their home, and identified appellant as the person who shot at their home. The evidence was cumulative and hence not unduly prejudicial.

### V.

We turn next to appellant's double jeopardy argument. Appellant was convicted of one count of illegal possession of a firearm in the Neighbor Case and of one count of illegal possession a firearm in the Crouse Case. The events that led to the prosecutions of appellant in these cases occurred a short time apart on the morning of April 26, 2009. Appellant claims that his possession of the firearms during this time

constitutes only one violation. Thus, he argues, his second trial for the illegal possession of a firearm offense, in the Crouse Case, constitutes double jeopardy.

The State argues that the prosecution on the charge of illegal possession of a firearm in the Crouse Case does not constitute double jeopardy. Appellee points out that the two handguns, a 9mm handgun and a .25 caliber Baretta, were found in appellant's vehicle when appellant was arrested. The State contends further that because two handguns were found in appellant's vehicle, the State could pursue two charges of illegal possession of a firearm, even if done in separate trials.

The protection against double jeopardy is the protection from being tried or punished twice for the same offense as provided by the Fifth Amendment of the U.S. Constitution. The Fifth Amendment is applicable to the states through the Fourteenth Amendment. *See Benton v. Maryland,* 395 U.S. 784, 787, 89 S.Ct. 2056, 2058, 23 L.Ed.2d 707 (1969). Even though the Maryland Constitution does not have a double jeopardy clause, Maryland common law provides the same or similar protection. *Kendall v. State,* 429 Md. 476, 479, 56 A.3d 223, 225 (2012). The protection against double jeopardy protects against three abuses: (1) the second prosecution for the same offense after acquittal; (2) the second prosecution for the same offense after conviction for that offense; and (3) the imposition of multiple punishments "for the same offense." *Benton,* 395 U.S. at 787, 89 S.Ct. at 2058. Appellant argues that, because he was convicted of one count of illegal possession of a firearm in the Neighbor Case and again in the Crouse Case, the State prosecuted him twice for the same offense. We disagree.

Maryland Code (2003, Repl.Vol.2011) § 5–133(b)(1) of the Public Safety Article defines illegal possession of a firearm and states, in pertinent part, as follows: "A person may not possess a regulated firearm if the person: has been convicted of a disqualifying crime." A regulated firearm includes a handgun. § 5–101(p)(1) of the Public Safety Article. A disqualifying crime for the purpose of § 5–133 of the Public

Safety Article includes "a crime of violence, a violation classified as a felony in the State, [or] a violation classified as a misdemeanor in the State that carries a statutory penalty of more than 2 years." § 5–101(g) of the Public Safety Article. Appellant does not contest that he was in possession of several regulated firearms at the time of his arrest or that a court has convicted him previously of a disqualifying crime.

We find *Webb v. State*, 311 Md. 610, 536 A.2d 1161 (1988), informative to our examination of appellant's convictions for illegal possession of a firearm. In *Webb*, the defendant was convicted of two counts of carrying and transporting a handgun. The defendant was in possession of the gun when he robbed someone at 1:30 a.m. and when he was arrested at 4:30 a.m. The State offered no evidence at trial that appellant was in possession of more than one gun during this time period. In reversing the defendant's conviction on one count of illegal possession of a firearm, the Court of Appeals stated as follows:

"On the record before us, all that was proved which was material with respect to the circumstances surrounding the handgun offense was that on 13 May 1986, about 1:30 a.m., Webb was unlawfully carrying a handgun, and that about three hours later he was unlawfully carrying a handgun. The State did not establish that more than one handgun was involved or that the carrying of the weapon between 1:30 a.m. and 4:30 a.m. was intermittent."

*Id.* at 618–19, 536 A.2d at 1165. Thus, had the State in *Webb* offered evidence that at some point the defendant was in possession of two different handguns, the defendant could have been found guilty of two counts of illegal possession of a firearm.

The Court of Appeals confirmed that possession of more than one regulated firearm can sustain multiple convictions under § 5–133 of the Public Safety Article. In *Melton v. State*, 379 Md. 471, 842 A.2d 743 (2004), the defendant was convicted of illegal possession of a firearm by a person convicted previously of a crime of violence, illegal possession of a firearm by a person previously convicted of a felony, and

illegal possession of a firearm by a person convicted of a misdemeanor with a penalty of over two years of incarceration. The State argued that a defendant could be charged with a count of illegal possession of a firearm for each prior conviction even though the defendant had possessed only a single regulated firearm. After reviewing the statutory test, the Court of Appeals stated that by enacting § 5–133 of the Public Safety Article the General Assembly prohibited the

> *"possession* of a firearm by a person with *certain qualifying convictions,* which suggests that preventing the act of possessing firearms was the true goal of the legislation, not multiple punishments for a single act based upon multiple prior convictions. The driving force behind the statute, and the evil sought to be remedied, is the *act* of possessing the regulated firearm."

*Melton* at 485, 842 A.2d at 751. The Court of Appeals held that the unit of prosecution was the regulated firearm which the defendant possessed rather than the previous convictions of the defendant. *Id.* at 502, 842 A.2d at 761. In other words, a defendant commits a separate violation of the statute for each regulated firearm that is in his possession. Since appellant was in possession of two regulated firearms, the State may prosecute him for two counts of illegal possession of a regulated firearm.

Appellant committed two separate offenses of illegal possession of a firearm. At the time of his arrest, appellant was in possession of two firearms, a 9mm handgun and a .25 caliber Baretta handgun. Both are regulated firearms within the meaning of § 5–133(b) of the Public Safety Article. Possession of each firearm is unlawful under the statute and each is punishable separately. *Melton,* 379 Md. at 503, 842 A.2d at 761–62. Appellant's trial and conviction on a second count of illegal possession of a firearm does not constitute double jeopardy if for a separate firearm.

*JUDGMENTS OF THE CIRCUIT COURT FOR HARFORD COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.*