Kevin E. Jones v. State of Maryland, Case No. 14, September Term, 2014

**CRIMINAL LAW – SECOND-DEGREE ASSAULT – INTENT-TO-FRIGHTEN –**
Court of Appeals held that defendant can commit second-degree assault of intent-to-frighten type against victim of whose presence in particular defendant does not know.

Circuit Court for Somerset County
Case No. 19-K-10-009451

Argued: October 6, 2014

IN THE COURT OF APPEALS

OF MARYLAND

No. 14

September Term, 2014
_____

KEVIN E. JONES

v.

STATE OF MARYLAND
_____

Barbera, C.J.
Harrell
Battaglia
Greene
Adkins
McDonald
Watts,

JJ.
_____

Opinion by Watts, J.
_____

Filed:  November 19, 2014

We decide whether a defendant can commit second-degree assault of the intent-to-frighten type against a victim of whose presence in particular the defendant does not know. We hold that a defendant can do so.

## BACKGROUND

The State, Respondent, charged Kevin E. Jones ("Jones"), Petitioner, with various criminal offenses, including second-degree assault of the intent-to-frighten type against Christine Johnson ("Johnson"). In the Circuit Court for Somerset County ("the circuit court"), a jury tried and convicted Jones.

Because Jones contends that the evidence was insufficient to support a conviction, we summarize the evidence that the State offered at trial.

Byron Johnson ("Byron") testified as follows. On the night of September 17, 2010, Byron and Jones were passengers in a car. Jones said that "he [had] got[ten] into an altercation with two boys" at Wink Lane Apartments. Byron heard a gun being loaded. Out of the corner of his eye, Byron saw Jones holding a gun. Eventually, the car stopped near Wink Lane Apartments. While Byron remained in the car, Jones exited the car, walked to an apartment's front door, and knocked on it. A woman answered the door. Jones asked: "[W]here the two [n*****]s at[?]" Byron heard "yelling." The woman shut the door, and Byron heard three gunshots. Jones returned to the car and said that "he was going to kill . . . the two boys [whom] he was trying to get."

Nikita Tindley ("Tindley"), Johnson's daughter, testified as follows. On the

morning of September 18, 2010,[1] Tindley, Johnson, and others were in an apartment at Wink Lane Apartments. Jones knocked on the apartment's front door. Tindley opened the door. Jones asked: "[W]here the [n*****]s at[?]" Jones reached toward his pants. Tindley shut the door, saw Johnson approaching the door, and said: "[D]on't go to the door[,] they got a gun." Tindley heard three gunshots.

Johnson testified as follows. Tindley shut the door; Johnson approached the door; and Tindley said: "[D]on't go to the door[,] they got a gun." Johnson "hollered" to her grandson, who was in the living room: "[G]et down[.]" Johnson heard three gunshots, which frightened her.

Officer Dave Adams of the Princess Anne Police Department testified that he went to the apartment in which Tindley and Johnson had been and found: a bullet hole in the front door; a bullet hole above the front door; a bullet in a wall in the living room; and a bullet in a wall in a rear bedroom.

The jury convicted Jones of crimes, including second-degree assault of the intent-to-frighten type against Johnson. Jones appealed, and the Court of Special Appeals affirmed. See Jones v. State, 213 Md. App. 208, 222, 73 A.3d 1136, 1145 (2013). Jones filed a petition for a writ of *certiorari*,[2] which this Court granted. See Jones v. State, 436 Md. 327, 81 A.3d 457 (2013).

---

[1] A review of the record reveals that Jones entered the car on the night of September 17, 2010, and that the gunshots occurred after midnight on the morning of September 18, 2010.

[2] In the petition for a writ of *certiorari*, Jones raised one issue: "Was the evidence sufficient to convicted [Jones] of second[-]degree assault of the intent[-]to[-]frighten [type] where the State failed to prove that [Jones] was aware of the existence of the victim?"

**DISCUSSION**

Jones contends that the evidence was insufficient to support the conviction for second-degree assault of the intent-to-frighten type against Johnson because: (1) the evidence was insufficient to support a reasonable inference that Jones knew that Johnson—or anyone other than Tindley, for that matter—was in the apartment; and (2) a defendant cannot commit second-degree assault of the intent-to-frighten type against a victim of whose presence in particular the defendant does not know. The State responds that the evidence was sufficient to support the conviction for second-degree assault of the intent-to-frighten type against Johnson because: (1) the evidence was sufficient to support a reasonable inference that Jones knew that multiple people were in the apartment; and (2) a defendant can commit second-degree assault of the intent-to-frighten type against a victim of whose presence in particular the defendant does not know, as the State may prove a defendant's intent through circumstantial evidence.

Evidence is sufficient to support a conviction where, "after viewing the evidence in the light most favorable to the [State], *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Hobby v. State, 436 Md. 526, 538, 83 A.3d 794, 800 (2014) (emphasis in original) (citation and internal quotation marks omitted). In determining whether evidence was sufficient to support a conviction, an appellate court "defer[s] to any possible reasonable inferences [that] the trier of fact could have drawn from the . . . evidence[.]" Id. at 538, 83 A.3d at 801 (citation omitted).

Md. Code Ann., Crim. Law (2002, 2012 Repl. Vol.) § 3-203 criminalizes second-degree assault, of which there are three types: "(1) intent to frighten, (2) attempted

battery, and (3) battery." Snyder v. State, 210 Md. App. 370, 382, 63 A.3d 128, 135 (Raker, J.), cert. denied, 432 Md. 470, 69 A.3d 476 (2013). A defendant commits second-degree assault of the intent-to-frighten type where: (1) "the defendant commit[s] an act with the intent to place [a victim] in fear of immediate physical harm"; (2) "the defendant ha[s] the apparent ability, at [the] time, to bring about the physical harm"; and (3) "[t]he victim [is] aware of the impending" physical harm. Snyder, 210 Md. App. at 382, 63 A.3d at 135 (citation omitted). The State may prove a defendant's intent through "direct [evidence] or circumstantial evidence[.]" Bible v. State, 411 Md. 138, 158, 982 A.2d 348, 359 (2009) (plurality op.) (quoting Thornton v. State, 397 Md. 704, 714, 919 A.2d 678, 683 (2007)) (second alteration in original).

In Ford v. State, 330 Md. 682, 708, 689, 625 A.2d 984, 996, 987 (1993), this Court held that evidence was sufficient to support convictions for assault with the intent to disable drivers and passengers where a defendant threw rocks at moving vehicles. First, this Court determined that the evidence was sufficient to support a finding that the defendant knew that passengers were in the vehicles. See id. at 705, 625 A.2d at 995. Next, this Court concluded that the evidence was sufficient to "support[] a finding that [the defendant] inten[ded] to disable any passengers in the vehicle[s,]" as the defendant "created a zone of extreme peril inside the vehicles." Id. at 707, 625 A.2d at 996.

Here, we conclude that a defendant can commit second-degree assault of the intent-to-frighten type against a victim of whose presence in particular the defendant does not know. A defendant commits second-degree assault of the intent-to-frighten type only if "the defendant commit[s] an act with the intent to place another in fear of immediate

physical harm[.]" <u>Snyder</u>, 210 Md. App. at 382, 63 A.3d at 135. Where a defendant intentionally commits an act that creates a zone of danger, and where the defendant knows that multiple people are in the zone of danger, the defendant intends to place **everyone** in the zone of danger in fear of immediate physical harm—even if the defendant does not know of a particular victim's presence in the zone of danger. <u>See</u> <u>Ford</u>, 330 Md. at 689, 705, 707, 25 A.2d at 987, 995, 996 (Where a defendant threw rocks at moving vehicles, and where the evidence was sufficient to support a finding that the defendant knew that passengers were in the vehicles, this Court concluded that the evidence was sufficient to "support[] a finding that [the defendant] inten[ded] to disable any passengers in the vehicle[s,]" as the defendant "created a zone of extreme peril inside the vehicles.").

We reject Jones's implicit contention that this Court decided <u>Ford</u> wrongly by relying on the doctrine that "[i]t is permissible to infer that '[a defendant] intends the natural and probable consequences of [the defendant's] act.'" <u>Ford</u>, 330 Md. at 704, 625 A.2d at 994 (quoting <u>Davis v. State</u>, 204 Md. 44, 51, 102 A.2d 816, 819-20 (1954)). Although Jones does not expressly criticize this Court's logic in <u>Ford</u>, he contends that the "natural and probable consequences" doctrine should not apply to specific intent crimes in general. Jones relies on secondary sources whose authors criticize the "natural and probable consequences" doctrine, under which, supposedly, the State must prove merely that a defendant's actions were negligent, not intentional. <u>See, e.g.</u>, Wayne R. LaFave, Criminal Law 270 (5th ed. 2010) (The "natural and probable consequences" doctrine "destroy[s] the concept of intention and replace[s] it entirely with negligence.");

- 5 -

Model Penal Code § 2.06 at 312 n.42 (1985) ("To say that the accomplice is liable if the offense committed is . . . the 'probable consequence' of another crime is to make him [or her] liable for negligence[.]").

These concerns are unfounded. This Court has already "disagree[d]" with LaFave's and the Model Penal Code's supposition that the "natural and probable consequences" doctrine "predicates liability on . . . negligence[.]" Sheppard v. State, 312 Md. 118, 123 n.3, 538 A.2d 773, 775 n.3 (1988). As this Court has clarified, under the "natural and probable consequences" doctrine, a defendant is not **presumed** to have intended the natural and probable consequences of the defendant's actions; instead, a finder of fact **may, but need not, infer** that the defendant intended the natural and probable consequences of the defendant's actions. See Thornton, 397 Md. at 733, 919 A.2d at 695 ("[O]nly an inference, rather than a presumption of intent, may be drawn from voluntary acts . . . . [T]he trier of fact is [not] allowed to presume that one intends the natural and probable consequences of his or her acts[.]" (Citation omitted)); see also MPJI-Cr 3:31 ("[Y]ou may, but are not required to, infer that a person ordinarily intends the natural and probable consequences of [his] [her] acts [and/or omissions]." (Some brackets in original)). The lack of a presumption of intent negates the criticism of the "natural and probable consequences" doctrine. See Model Penal Code § 2.02 at 236 n.12 (1985) (The "natural and probable consequences" doctrine "should not be taken as an invitation to dispense with the need for **making the inference**" about intent. (Emphasis added)).

Here, first, we determine that the evidence was sufficient to support a reasonable

inference that Jones knew that multiple people were in the apartment. It is undisputed that Jones knocked on the apartment's front door; Tindley answered the door; and Jones asked: "[W]here the two [n*****]s at[?]" In other words, Jones indicated that he was seeking people other than Tindley and that he believed that at least two people (in addition to Tindley) may have been in the apartment. Indeed, Byron testified that: (1) before the shootings, Jones said that "he [had] got[ten] into an altercation with two boys" at Wink Lane Apartments; and (2) after the shootings, Jones said that "he was going to kill . . . the two boys [whom] he was trying to get." Johnson testified that, after Tindley shut the door, but before she heard the gunshots: (1) Tindley told Johnson: "[D]on't go to the door[,] they got a gun"; and (2) Johnson "hollered" to her grandson: "[G]et down[.]" Byron testified that, while he remained in the car (*i.e.*, while he was farther away from the apartment than Jones was), he heard "yelling." Based on Johnson's testimony and Byron's testimony, a finder of fact could reasonably infer that Jones knew that multiple people were in the apartment.

Next, we conclude that the evidence was sufficient to support a reasonable inference that Jones intended to place everyone in the apartment in fear of immediate physical harm. It is undisputed that, while Johnson was in the apartment, Jones intentionally fired a gun three times, and at least two bullets entered the apartment. In other words, Jones intentionally committed an act that turned the apartment into a zone of danger.[3] As discussed above, the evidence was sufficient to support a reasonable

_____

[3]The extent of a zone of danger will depend on each case's particular circumstances. For example, in Ford, 330 Md. at 707, 625 A.2d at 996, the zone of danger was the interior of the vehicles at which the defendant threw rocks. Here, the zone of danger is the apartment

- 7 -

inference that Jones knew that multiple people were in the zone of danger. Thus, Jones intended to place everyone in the zone of danger in fear of immediate physical harm—even if Jones did not know of Johnson's presence in the zone of danger.

We are unpersuaded by Jones's reliance on State v. Whalen, 49 S.W.3d 181, 185 (Mo. 2001), in which the Supreme Court of Missouri held that evidence there was insufficient to support convictions for first-degree assault. In Whalen, see id., while two law enforcement officers were in a hallway and outside of the defendant's sight, the defendant shot a third law enforcement officer who was in his bedroom's doorway. A jury convicted the defendant of first-degree assault against the two unharmed law enforcement officers. See id. On appeal, the defendant contended that the evidence was insufficient to support a finding that he knew of the two unharmed law enforcement officers' presence. See id. The Supreme Court of Missouri agreed, stating that "only speculation support[ed] the **inference** that" the defendant knew of the two unharmed law enforcement officers' presence. Id. (emphasis added). The Supreme Court of Missouri implicitly acknowledged that a finder of fact may infer a defendant's knowledge of a victim's presence; in Whalen, see id., the evidence was simply insufficient to support such an inference.

Similarly, we are unpersuaded by Jones's reliance on State v. Wilson, 924 S.W.2d 648, 649, 650 (Tenn. 1996), in which the Supreme Court of Tennessee held that evidence

---

because Jones shot at the apartment's front door; one bullet entered the living room; and another bullet entered a rear bedroom. Because there is no issue as to second-degree assault of the intent-to-frighten type against anyone who was outside the apartment, we need not consider whether the zone of danger included other parts of, or any area outside, the apartment building.

there was insufficient to support convictions for aggravated assault where a defendant shot at a house that contained multiple people. No people or vehicles were near the house, and "[n]o testimony pointed to any facts—lights, noises, or other signs—which would indicate to a passerby that the house was occupied." Id. at 652. Thus, the Supreme Court of Tennessee determined that the evidence was insufficient to support a finding that the defendant knew that the house was occupied. See id.

Likewise, Jones's reliance on Hollingsworth v. State, 366 So. 2d 326 (Ala. Crim. App. 1978), is misplaced. In Hollingsworth, id. at 331-32, 327, the Court of Criminal Appeals of Alabama held that evidence there was insufficient to support a conviction for assault with the intent to murder where a defendant shot into a house. "[T]here [was] no evidence what[so]ever" that the defendant knew "that the house was . . . occupied[.]" Id. at 331-32.

Because we determine that the evidence was sufficient to support a reasonable inference that Jones knew that multiple people—i.e., people other than Tindley—were in the apartment, this case is distinguishable from Whalen, 49 S.W.3d 181, Wilson, 924 S.W.2d 648, and Hollingsworth, 366 So. 2d 326, in which appellate courts held that certain evidence was insufficient to support convictions for assault where the evidence was insufficient to support findings that the defendants knew of the presence of more than one victim, or the presence of any victims at all.[4]

[4]We also reject Jones's contention that the circuit court erred in denying the motion for judgment of acquittal as to second-degree assault of the intent-to-frighten type against Johnson, because, in granting the motion for judgment of acquittal as to attempted first-degree murder against Johnson and her grandson, the circuit court stated: "I'm not even sure [that] Jones knew that there was anybody [other than Tindley] in the apartment." Although

We hold that the evidence was sufficient to support Jones's conviction for second-degree assault of the intent-to-frighten type against Johnson, and a defendant can commit second-degree assault of the intent-to-frighten type against a victim of whose presence in particular the defendant does not know.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. PETITIONER TO PAY COSTS.**

---

the circuit court may have speculated as much in considering attempted first-degree murder, attempted first-degree murder is comprised of elements that second-degree assault lacks, such as deliberation, premeditation, and a substantial step beyond mere preparation; thus, it does not follow from the circuit court's grant of the motion for judgment of acquittal as to attempted first-degree murder that the evidence was insufficient to support a conviction for second-degree assault of the intent-to-frighten type against Johnson.

- 10 -